FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RYANNE C,[1] | No.    1:24-cv-03023-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS** |
| MARTIN O'MALLEY, Commissioner of Social Security, | |
| Defendant. | |

Due to depression, anxiety, bipolar disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), learning disorder, nausea and stomach issues, dissociative identity disorder, and gender dysphoria, Plaintiff Ryanne C. claims that he is unable to work fulltime and appeals the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c). Because Plaintiff is transgender, the Court refers to Plaintiff using the pronouns he/his/him.

DISPOSITIVE ORDER - 1

redetermination of his childhood supplemental security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of the state agency consultants and consultative examiners, erred in failing to properly perform the Psychiatric Review Technique at step two, and erred in her consideration of Plaintiff's subjective complaints. As is explained below, the ALJ erred in her consideration of the medical opinions and failed to develop the record properly by obtaining medical expert testimony. This matter is remanded for further proceedings.

## I. Background

In April 2018, Plaintiff's guardian filed an application for benefits under Title 16, and Plaintiff was found disabled by ALJ Blanton in March 2020, due to meeting Listing 112.04, 112.11, and 112.15.[2] Plaintiff's claim was reviewed after he turned 18 and he was found to be no longer disabled as of August 30, 2021, by a hearing officer.[3]

After Plaintiff appealed the hearing officer's decision, ALJ Evangeline Mariano-Jackson held a telephone hearing in March 2023, at which Plaintiff

---

[2] AR 130, 444.

[3] AR 333.

appeared with his representative and testified.[4]  A vocational expert also appeared and testified.[5]

Plaintiff testified that he had completed high school but his attorney later explained that he had obtained a GED.[6] Plaintiff confirmed that he was enrolled in college in fall 2022, but had failed all his classes.[7] He said he was currently enrolled but only taking two classes, one of which was an "easy class."[8] He said he was supposed to take three classes but had to drop one because he was failing.[9] He said he was getting a B or C in the health class and was failing the math class.[10] He was on academic warning and was not sure he could go back for spring.[11] Plaintiff stated that he did not think he could work because he was mentally drained and not able to get out of bed due to his bipolar disorder.[12]

---

[4] AR 75-106.

[5] *Id.*

[6] AR 80-81.

[7] AR 83.

[8] *Id.*

[9] AR 83-84.

[10] AR 84.

[11] *Id.*

[12] AR 85.

Plaintiff said he is supposed to go to classes daily but at times only goes once or twice a week and that his activities are limited to eating and doing homework.[13] He said he had stopped his medication because it was making his condition worse.[14] He said that he had not seen his doctor since fall of the prior year and that his doctor was not returning his calls.[15] He said that he did his homework online and that he was homeless because he had gotten evicted from his apartment but was living on campus.[16] He does not have a driver's license because he could not pass the written test.[17] When he needs to go somewhere, he will ask his grandfather for a ride.[18] Plaintiff testified that he was still taking his anxiety and ADHD medications but had stopped taking his bipolar medication.[19] Plaintiff said he found out the medication was a mood stabilizer and not a bipolar medication and that it was not working.[20]

---

[13] *Id.*

[14] *Id.*

[15] AR 86.

[16] AR 86-87.

[17] AR 87.

[18] AR 87-88.

[19] AR 88.

[20] AR 89.

Plaintiff said that physically he had pain in his back, knees, ankles, and fingers from fibromyalgia and that the pain differed but was worse in cold or hot weather.[21] He said that ice or heat will at times help with pain and at times nothing will help.[22] He said that he was taking medication for that but when his doctor changed he was no longer prescribed the medications.[23] When he has anxiety, he will shut down and either hyperventilate or pass out and that this happens when high stress situations trigger trauma.[24] He said he will have a fight or flight response and either run away or yell and get into a physical altercation.[25] He has gotten into fights with both friends and strangers.[26] He said that he takes ADHD medication but still has trouble focusing for more than a few minutes on his homework.[27] Without medication he cannot focus at all.[28] Plaintiff said that his uncle got him a job in sanitation but he lost it because he did not show up for a

---

[21] *Id.*

[22] AR 90.

[23] *Id.*

[24] AR 90-91.

[25] AR 91.

[26] *Id.*

[27] AR 92.

[28] *Id.*

week of work because he was in pain.[29] He thought that if he was working he would still have problems going into work.[30] Currently his only side effect of medication is decreased appetite but in the past he had taken Abilify and it caused a nervous tick.[31] He has had suicidal thought and self-harm and currently he will burn himself in the shower and will pick at his skin.[32] He said he has suicidal thought daily.[33]

Plaintiff testified that since October 2022 he was in a counseling workshop at student counseling.[34] He stopped going to the counseling workshop but was still in counseling with Comprehensive Health Care and he was also in a program for domestic violence survivors.[35]

---

[29] AR 93.

[30] AR 93-94.

[31] AR 94.

[32] AR 94-95.

[33] AR 95.

[34] AR 95-96.

[35] AR 96.

1   After the hearing, the ALJ issued a decision denying benefits.[36] The ALJ

2   found Plaintiff's alleged symptoms were not entirely consistent with the medical

3   evidence and the other evidence.[37] As to medical opinions, the ALJ found:

4   - The opinions of state agency evaluators Merry Alto, MD, and Nevine

5     Makari, MD, to be partially persuasive.

6   - The opinions of consultative examiner Patrick Metoyer, PhD, to be

7     persuasive.

8   - The opinions of state agency evaluators Michel Brown, PhD, and

9     Renee Eisenhauer, PhD, to be persuasive.[38]

10  The ALJ also considered the third-party statement of Plaintiff's grandfather,

11  Michael M., and high school guidance counselor Mindy Faber.[39]

12  As to the sequential disability analysis, the ALJ found:

13  - Step one: Plaintiff was notified that he was found no longer disabled

14    as of August 30, 2021, based on a redetermination of disability for

15    adults who file new applications.

16

17

_____

18  [36] AR 33-58.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines

19  whether a claimant is disabled.

20  [37] AR 41-44.

21  [38] AR 44-46.

22  [39] AR 44.

23

- Step two: Plaintiff had the following medically determinable severe impairments: scoliosis; fibromyalgia; bipolar disorder; major depressive disorder; anxiety; ADHD; specific learning disorder in reading, writing and math; PTSD; and gender dysphoria.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments with consideration of Listing 1.15, 1.1622, 14.09, 12.04, 12.06, 12.11, and 12.15.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  [Plaintiff] can never work in extreme cold; can understand, remember, and carry out simple, routine, and repetitive tasks requiring no more than 1-2-3 step instructions and involving only simple work-related decisions and occasional decision making and changes in the work setting; can never perform assembly line work; can tolerate occasional interaction with coworkers and the public.

- Step four: Plaintiff has no past relevant work.

- Step five: as an alternative finding, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a garment sorter (DOT 222.687-014), a router (DOT 222.587-038), and a marker II (DOT 920.687-126).[40]

---

[40] AR 38-47.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[41]

## II.      Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[42] and such error impacted the nondisability determination.[43] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44]

---

[41] AR 440.

[42] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[43] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[44] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.    Analysis

Plaintiff seeks relief from the denial of disability on three grounds. He argues the ALJ erred at step three because she failed to adequately articulate her analysis of the Psychiatric Review Technique at step three, erred when evaluating the medical opinions, and erred in her assessment of Plaintiff's testimony.  As is explained below, the Court concludes that the ALJ consequentially erred at step three and erred in her evaluation of the medical opinion evidence.

**A.    Step Two/Three (Listings): Plaintiff has established consequential error.**

Plaintiff contends the ALJ failed to properly perform the Psychiatric Review Technique at step three and that the error tainted the ALJ's analysis of the listings and the medical opinion evidence.  The Commissioner argues that the ALJ reasonably concluded that Plaintiff's impairments did not meet or equal a listing. The Court agrees with Plaintiff that the ALJ failed to properly articulate her reasoning when performing the Psychiatric Review Technique.

1.    <u>Standard</u>

If a claimant meets all of the listing criteria or if his impairments medically equal a listed impairment, he is considered disabled.[45] Medical equivalence will be

---

[45] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

found if the medical findings are at least of equal medical significance to the required criteria.[46] "[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."[47]

When a claimant has presented a "colorable claim" of mental impairment, the ALJ is required "to follow a special psychiatric review technique."[48]  Once a colorable claim of mental impairment is made, the ALJ must then determine whether a claimant has a medically severe impairment or combination of impairments at step two of the disability determination, and the ALJ is bound by 20 C.F.R. § 416.920a.[49]. Under 20 C.F.R. § 416.920a, the ALJ is required to perform a "special psychiatric review technique," "rate the degree of functional limitation for four functional areas," "determine the severity of the mental impairment (in part based on the degree of functional limitation), ... and then, if the impairment is

---

[46] 20 C.F.R. § 416.926(d)(3); *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990).

[47] *Marcia*, 900 F.2d at 176; *see also Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (The ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.").

[48] *Keyser v Comm. Soc. Sec. Admin.*, 648 F.3d 721. 725 (9th Cir. 2011)

[49] *Id.*

severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder."[50]

"The primary purpose of the final rules is to describe the technique, as distinct from the [PRT Form], and to require the use of the technique in all determinations and decisions at all levels of the administrative review process..... In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a "narrative rationale," instead of the "checklist of ... conclusions" found in a PRTF."[51]

---

[50] *Id.*

[51] *Id.*

2.    The ALJ's findings

The ALJ articulated the following reasoning as to her consideration of the

Psychiatric Review Technique:

> The severity of the claimant's mental impairments, considered singly
> and in combination, do not meet or medically equal the criteria of
> listings 12.04, 12.06, 12.11, and 12.15. In making this finding, I have
> considered whether the "paragraph B" criteria are satisfied, which are
> the four broad functional areas set out in the disability regulations for
> evaluating mental disorders and in section 12.00C of the Listing of
> Impairments (20 CFR, Part 404, Subpart P, Appendix 1). To satisfy the
> "paragraph B" criteria, the mental impairments must result in at least
> two "marked" limitations or one "extreme" limitation in a broad area of
> functioning: 1) understanding, remembering, or applying information;
> 2) interacting with others; 3) concentrating, persisting, or maintaining
> pace; or 4) adapting or managing themselves. A marked limitation
> means functioning in this area independently, appropriately,
> effectively, and on a sustained basis is seriously limited. An extreme
> limitation is the inability to function independently, appropriately, or
> effectively, and on a sustained basis.
>
> Based on the totality of the medical evidence of record, the claimant has
> moderate limitations in all four broad functional areas. *As discussed in
> more detail later in this decision*, he can perform routine daily activities
> but has difficulty with remembering, focusing, and concentrating in
> order to persist at tasks. He can interact appropriately with others the
> greater part of the time but will have difficulty when experiencing
> increased pain, stress, or feelings of anxiety. Although his chronic pain
> and variable mood affects his functioning at times, there is no evidence
> that he is unable to adequately regulate his emotions and control
> behavior. (See e.g., Exhibits B14F/4-5; B20F/4-5; B26F/3-5, 23-25;
> B28F/11, 35, 90, 118; B29F/7).[52]

3.    Analysis

The ALJ's analysis was boilerplate and flawed.  First, the ALJ made a

conclusory finding that Plaintiff's limitations in the four functional areas was

moderate and stated that her findings were discussed in more detail later in the

decision. While it would not have been improper for the ALJ to make specific

findings as to the four functional areas later in the decision and incorporate them in this manner, she failed to do so.  At no point later in the decision did the ALJ properly articulate in any narrative paragraph her findings as to the four functional areas as to the record as a whole.

In the language in which the ALJ addresses the four functional areas, she clearly identified the second functional area as it pertained to interacting with others, as well as the fourth functional area of adapting or managing oneself.[53]  But her language as to the other two functional areas is vague and unclear and does not indicate that she considered the functional area of understanding, remembering, or applying information adequately nor did she articulate specific findings as to the functional area of concentrating, persisting, or maintaining pace.

In this instance the ALJ's failure to articulate her reasoning as to the functional area of concentrating, persisting, and maintaining pace is consequential because Plaintiff argues that when considering the medical opinions, the ALJ found the opinions of Dr. Metoyer, Dr. Brown, and Dr. Eisenhauer to be persuasive but included no provision in the RFC for attendance although all three found at least moderate limitations in the ability to maintain attendance, which is an activity considered in the third functional area of concentrating, persisting, and maintaining pace.

---

[53] *Id.*

DISPOSITIVE ORDER - 14

4.    Summary

The ALJ's failure to properly articulate her reasoning at step two/three regarding the Psychiatric Review Technique was consequential.    The ALJ did not offer sufficient analysis in later portions of the decision to permit the Court to meaningfully review the ALJ's finding, and there is a question whether the underlying record contains sufficient evidence to support the ALJ's findings as to one of the four functional areas.[54]  For that reason the Court concludes that remand is warranted.

**B.    Medical Opinion: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred in her evaluation of the medical opinions regarding Plaintiff's mental impairments.[55]  Plaintiff argues that the ALJ erred because she found that Dr. Metoyer's opinion was persuasive but failed to provide

_____

[54] *Molina*, 674 F.3d at 1112; SSR 17-2p; *see also Bray v. Comm'r of Soc. Sec. Adm.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (recognizing that the ALJ's decision must be analyzed based on his reasoning and findings and "not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

[55] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

1  in the RFC for any limitation in maintaining attendance and completing a normal

2  work week without interruption and failed to adequately provide for Dr. Metoyer's

3  opined limitation handling stress if in persistent contact with others by limiting

4  Plaintiff to occasional contact with others.[56]  He also argues that the ALJ erred by

5  failing to properly articulate the supportability factor when considering Dr. Brown

6  and Dr. Eisenhauer's opinions.[57] The Commissioner counter argues that Plaintiff

7  did not show that the ALJ was required to provide additional limitations to account

8  for a moderate limitation in maintaining attendance, that the plain meaning of the

9  word "persistent" is more than occasional and that the ALJ's statement that

10  Dr. Brown and Dr. Eisenhauer's opinions were supported by a thorough view of the

11  record satisfied the supportability factor.[58] The Court agrees in part with Plaintiff

12  and in part with the Commissioner.

13         1.   Standard

14         The ALJ was required to consider and evaluate the persuasiveness of the

15  medical opinions and prior administrative medical findings.[59] The factors for

16  evaluating the persuasiveness of medical opinions and prior administrative

17  medical findings include, but are not limited to, supportability, consistency,

---

[56] ECF No. 6.

[57] *Id.*

[58] ECF No. 10.

[59] 20 C.F.R. § (b); 416.920c(a), (b).

DISPOSITIVE ORDER - 16

relationship with the claimant, and specialization.[60] Supportability and consistency are the most important factors,[61] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[62] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion was being given.[63] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[64]

---

[60] 20 C.F.R. § 416.920c(c)(1)–(5).

[61] *Id.* § 416.920c(b)(2).

[62] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[63] Id.

[64] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

2.    <u>Relevant Medical Evidence</u>

Because Plaintiff argues that the ALJ failed to properly assess medical opinion evidence regarding mental impairments, the Court will only address the relevant evidence.

a.    <u>*Dr. Metoyer*</u>

On August 15, 2021, Plaintiff was examined by Patrick Metoyer, PhD, at the request of the Commissioner.[65] Dr. Metoyer noted that Plaintiff's chief listed complaints were schizophrenia, dissociative identify disorder, bipolar disorder, depression, anxiety, learning disorders, ADHD, and fibromyalgia.[66] Dr. Metoyer stated that Plaintiff's ability to complete activities of daily living such as cooking, cleaning, shopping, and laundry are impacted by physical health, chronic pain, anxiety, PTSD, learning disorder, and gender dysphoria.[67] Plaintiff reported living with his aunt; having difficulty with personal care that included showering only once or a twice a week; difficulty with household chores and the need to pace himself; and difficulty managing finances.[68]  Dr. Metoyer stated that he reviewed the following records: Catholic Charities of Yakima psychiatric evaluations dated July 20, 2020, and November 14, 2020; Yakima School District evaluation report

---

[65] AR 1621-1626.

[66] AR 1621.

[67] *Id.*

[68] *Id.*

dated October 25, 2018; medical records dated November 2020, December 2020, and January 2021; and records from Comprehensive Health Care dated March 4, 2021; and June 7, 2021.[69]

Plaintiff reported symptoms of anxiety including panic attacks; symptoms of PTSD including nightmares, intrusive memories, hypervigilance, exaggerated startle response, and detachment from others; symptoms of depression including depressed mood, anhedonia, difficulty concentrating, fatigue, helplessness, and hopelessness; a suicide attempt one year prior; a past history of ADHD and special education services from elementary through high school; as well as symptoms of gender dysphoria.[70] Plaintiff reported a worsening of anxiety, PTSD, mood dysregulation and gender dysphoria in the last five years but no change in ADHD or learning disorder.[71]

Plaintiff reported he is not currently taking psychotropic medication but was in counseling; no psychiatric hospitalization; an increase in symptoms when in pain or around others; a remote history of alcohol and prescription medication abuse in remission for four years; current use of edible marijuana for sleep; and physical symptoms including heat sensitivity, joint pain, fatigue and muscle pain

---

[69] AR 1622.

[70] *Id.*

[71] *Id.*

due to fibromyalgia.[72]  Plaintiff reported that he was adopted and raised by his

paternal grandparents and completed to the ninth grade.[73]  On mental status

examination, Plaintiff was well-groomed; was cooperative; reports his mood as

numb and irritable and had congruent affect; denied current suicidal ideation; had

non-pressured speech and goal directed thoughts; was oriented; had impaired

recall and memory; had normal fund of knowledge; had difficulty with tasks

requiring concentration; had impaired abstract thinking; had impaired judgment

and insight; and identified that his health issues impacted his day-to-day

functioning.[74]

Dr. Metoyer diagnosed panic disorder; PTSD; major depressive disorder,

recurrent, moderate; ADHD; specific learning disorder, reading, writing, and math;

and gender dysphoria.[75] Dr. Metoyer opined that Plaintiff would require assistance

of a representative payee.[76] Dr. Metoyer opined that Plaintiff's ability to interact

with co-workers and the public is moderately impaired; his ability to maintain

regular attendance is moderately impaired; his ability to understand, remember,

and carry out complex instructions is moderately to markedly impaired; his ability

---

[72] AR 1623.

[73] *Id.*

[74] AR 1624-1625.

[75] AR 1625.

[76] *Id.*

to complete a normal work day or work week without interruption is moderately

impaired; and his ability to deal with stress in the workplace is moderately to

markedly impaired if it involves persistent activity interacting with other

individuals.[77]

        *b.   <u>Dr. Brown</u>*

On August 30, 2021, Plaintiff's file was reviewed at the initial stage by state

agency consultant Michael Brown, PhD.[78] Dr. Brown opined that Plaintiff had

medically determinable impairments present that did not meet listings 12.04,

12.06, 12.08, 12.11, and 12.15.[79] Dr. Brown opined that Plaintiff had a moderate

limitation in the following 4 functional areas: understand, remember, or apply

information; interact with others; concentrate, persist, or maintain pace; and adapt

or manage oneself.[80] Dr. Brown explained that a consultative examiner had

diagnosed Plaintiff with panic disorder; PTSD; learning disability; major

depressive disorder, recurrent, moderate; ADHD; and gender dysphoria.[81]

Dr. Brown further opined that Plaintiff would have a moderate limitation in the

_____

[77] AR 1625-1626.

[78] AR 148.

[79] AR 147.

[80] *Id.*

[81] *Id.*

ability to understand and remember detailed instructions.[82] Dr. Brown explained

that Plaintiff had a history or special education services discontinued in 2018, and

that current mental status examinations showed mild cognitive and memory

limits.[83] Dr. Brown opined that Plaintiff would be moderately limited in the ability

to: carry out detailed instructions; maintain attention and concentration for

extended periods; perform within a schedule, maintain attendance; and be

punctual; and complete a normal work day or work week without interruption from

psychological symptoms and perform at a consistent pace.[84] Dr. Brown explained

that Plaintiff's fibromyalgia symptoms and somatic focus on pain would affect

concentration but that he remained capable of completing simple tasks in a 40 hour

week with customary breaks.[85] Dr. Brown opined that Plaintiff is moderately

limited in the ability to interact with the general public; and the ability to maintain

appropriate behavior and adhere to standards of neatness and cleanliness.[86]

Dr. Brown explained that Plaintiff could accept supervision and interact on a

superficial basis with the general public and coworkers.[87] Dr. Brown also opined

---

[82] AR 150.

[83] *Id.*

[84] AR 151.

[85] *Id.*

[86] *Id.*

[87] *Id.*

1    that Plaintiff was moderately limited in the ability to respond appropriately to

2    changes in the work setting and explained that he could adjust to work changes

3    found in simple tasks.[88]

4                    c.      _Dr. Eisenhauer_

5            On January 12, 2022, Plaintiff's file was reviewed at the reconsideration

6    stage by state agency consultant Renee Eisenhauer, PhD.[89] Dr. Eisenhauer opined

7    that Plaintiff had medically determinable impairments present that did not meet

8    listings 12.04, 12.06, 12.11, and 12.15.[90] Dr. Eisenhauer opined that Plaintiff had a

9    moderate limitation in the following 4 functional areas: understand, remember, or

10   apply information; interact with others; concentrate, persist, or maintain pace; and

11   adapt or manage oneself.[91] Dr. Eisenhauer adopted the RFC findings of

12   Dr. Brown.[92]  Dr. Eisenhauer provided the same narrative explanation given by Dr.

13   Brown as to the interference of Plaintiff's somatic complaints on his ability to

14   concentrate and the ability to interact with others on a superficial basis.[93]

---

[88] _Id._

[89] AR 158, 171.

[90] _Id._

[91] AR 157, 170.

[92] AR 160-161, 173-174.

[93] _Id._

3.    Analysis

Plaintiff argues that the ALJ erred by finding the opinions of Dr. Metoyer to be persuasive and but not providing for the opined moderate limitation in maintaining attendance in the RFC and containing a provision in the RFC limiting Plaintiff to occasional contact with others to satisfy the opined limitation in dealing with stress when in persistent contact with others. The Court agrees with Plaintiff as to the former but disagrees as to the latter.  Additionally, Plaintiff argues that the ALJ  failed to articulate her consideration of the supportability of Dr. Brown and Dr. Eisenhauer's opinions. The Commissioner asserts that the ALJ met her burden by simply stating that Dr. Brown and Dr. Eisenhauer's opinions were supported by their review of the record.  The Court disagrees with the Commissioner.

a.    *The ALJ's consideration of Dr. Metoyer's opinions*

The ALJ's articulated her consideration of Dr. Metoyer's opinions as follows:

Dr. Metoyer's opinion is also persuasive. He opined that the claimant has the ability to reason and understand and has some adaptation skills. "His ability to interact with coworkers and the public is likely moderately impaired due to anxiety, PTSD, mood symptoms, ADHD, learning disorder symptoms, and gender dysphoria symptoms, and tendency to isolate himself from others. His ability to maintain regular attendance in the workplace is moderately impaired. The claimant's ability to understand, remember and carry out complex instructions is moderately to markedly impaired. His ability to complete a normal workday or work week without interruption from anxiety, PTSD, mood symptoms, ADHD, learning disorder symptoms, and gender dysphoria symptoms is likely moderately impaired." In other words, the claimant is limited to simple tasks and has moderate limitations in interacting with others, maintaining regular attendance in the workplace, and completing a normal workday or workweek. These limitations are supported by Dr. Metoyer's thorough review of

the record, medical expertise, and familiarity with the Social Security regulations and they are consistent with the medical evidence of record since August 2021. Dr. Metoyer also opined, "His ability to deal with the usual stress encountered in the workplace is moderately to markedly impaired *if it involves persistent activity interacting with other individuals*" (emphasis added). Moderate limitations in this area are supported as noted above and are also consistent with the medical evidence of record. A marked degree of limitation in this area is not adopted, however, as the residual functional capacity finding accounts for this by limiting the claimant to only occasional interaction with coworkers and the public. Dr. Metoyer opinion is also consistent with the opinion of Dr. Brown and Dr. Eisenhauer (above). Thus, the above residual functional capacity finding includes limitations that encompass the opinion of Dr. Metoyer.[94]

Plaintiff is correct that the ALJ accepted Dr. Metoyer's opinions overall as persuasive and was then obliged to provide for those opined limitations in the RFC. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."[95]  However, when incorporating a credited medical opinion, the ALJ's findings need only be consistent with the opined limitations, not identical to them.[96] It is error for an ALJ to simultaneously claim to incorporate a medical opinion and yet, without explanation, omit relevant limitations set forth in that medical opinion.[97]

---

[94] AR 45-46.

[95] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[96] *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1271, 1223 (9th Cir. 2010).

[97] *See* SSR 96-8p, 1996 WL 374184 at *7 (Jul. 2, 1996).

The Court notes, however, that the ALJ clearly articulated that she was not accepting Dr. Metoyer's opined limitation of marked disability with "persistent activity interacting with other individuals" because she was limiting Plaintiff to occasional interaction with others.  Here, the ALJ expressly stated her reasoning. Moreover, the ALJ went on to reference the opinions of Dr. Brown and Dr. Eisenhauer.  Both Dr. Brown and Dr. Eisenhauer agreed with Dr. Metoyer as to a limitation in interacting with others and opined that interaction with others should be "superficial."

The Court agrees with the Commissioner that the plain meaning of the term persistent is synonymous with continuous.  While persistent is not a word commonly used in vocational terms, continuous is clearly in contradiction to occasional.  Moreover, the ALJ articulated the limitation to occasional contact was formulated to accommodate the limitation to superficial contact with others to which Dr. Brown and Dr. Eisenhauer both opined and which the ALJ found persuasive without exception.   Specifically, the Ninth Circuit held that an ALJ did not err in providing that a plaintiff, who medical sources opined was moderately limited in his ability to interact with others and who was able to "relate to others on a superficial work basis," was capable of "occasional" interaction with coworkers.[98]

---

[98] *Shaibi v Berryhill*, 883 F.3d 1102, 1106-1107 (9th Cir. 2017).

The Court concludes that the ALJ did not err in providing a limitation in the RFC that Plaintiff was limited to occasional contact with others to account for Dr. Metoyer's opined limitation in dealing with stress if required to have persistent contact with others.  The Court cannot find any similar provision articulated by the ALJ to account for Dr. Metoyer's opined limitation that Plaintiff has a moderate limitation in maintaining attendance.  This failure is compounded by the fact that Dr. Brown and Dr. Eisenhauer also opined that Plaintiff would have a moderate limitation in maintaining attendance.[99]  The Commissioner argues that because Dr. Brown and Dr. Eisenhauer stated that Plaintiff could complete simple work tasks for a 40-hour work week with customary breaks and rest periods, the ALJ was not required to consider Plaintiff's limitations in maintaining attendance.[100]  The Court disagrees.  Dr. Brown and Dr. Eisenhauer's statements regarding the ability to complete simple tasks for a 40-hour week adequately accounts for their opined moderate limitations in the ability to maintain attention and concentration, and to perform at a consistent pace without unreasonable rest periods.  But the statement relied on by the Commissioner does not appear to properly account for limitations in attendance and punctuality, as those functions are not directly affected by the complexity of the tasks to be performed.  As such, the Commissioner's reliance is misplaced.

---

[99] AR 151, 160-161, 173-174.

[100] ECF No. 10, citing to AR 151, 161, 173.

Because it is unclear that the ALJ properly accounted for moderate limitations in maintaining attendance and punctuality in the RFC, despite the fact that the limitation was opined to by all medical opinion sources, remand is warranted.

    b. <u>*The ALJ's consideration of Dr. Brown and Dr. Eisenhauer*</u>

The ALJ's articulated her consideration of the opinions of Dr. Brown and Dr. Eisenhauer in one single paragraph, stating:

> With regard to mental functioning, State agency psychological physicians, Michael Brown, Ph.D. (Exhibit B7A) and Renee Eisenhauer, Ph.D. (Exhibits B8A; B10A) opined that the claimant can understand and remember at least simple work tasks and instructions. Although his symptoms and somatic focus on pain will cause occasional wane in attention and concentration at times, he remains capable of consistently completing at least simple work tasks and instructions for a 40-hour workweek with /customary breaks and rest periods. He is capable of accepting supervision and can interact on a superficial basis with the general public and coworkers. He can adjust to work changes found within simple work tasks. This opinion is persuasive. It is supported by Dr. Brown's and Dr. Eisenhauer's thorough review of the record, medical expertise, and familiarity with the Social Security regulations. It is consistent with the counseling record and grossly normal mental status examinations (See e.g., Exhibits B14F/4-5; B20F/4-5; B26F/3-5, 23-25; B28F/11, 35, 90, 118; B29F/7), as discussed above. It is also consistent with the opinion of Dr. Metoyer (Exhibit B20F), discussed below. Thus, the above residual functional capacity finding includes limitations that encompass the opinions of Dr. Brown and Dr. Eisenhauer.[101]

The Court concludes that in the one paragraph analysis, the ALJ fails to consider the supportability factor in any meaningful manner. The regulations are

---

[101] AR 45.

clear that the ALJ is required to consider and articulate her reasoning both as to the supportability factor *and* the consistency factor.[102] The regulations are clear that a proper and thorough analysis of one of the two factors is not enough to overcome the failure to address the second.

Here, the ALJ only makes a cursory statement that Dr. Brown and Dr. Eisenhauer thoroughly reviewed the record.  While the Commissioner avers that this vague, cursory statement satisfies the ALJ's duty to articulate, it does not.  Just as the Court would not and could not accept a vague, cursory statement that a consultative or treating physician's opinion was based on a thorough examination, the Court cannot accept the ALJ's reasoning here.  The regulations require that the ALJ adequately explain what specific findings made by the opinion source support their opinions.  Notably, both Dr. Brown and Dr. Eisenhauer's reports contained lengthy narrative explanations that indeed might have supported their opinions.  But the ALJ gave no such analysis and merely stated that they reviewed the record.

The reasons that the ALJ articulated as to the supportability factor were not "good reasons" to discount the medical opinions.  The Court concludes that remand is warranted for the ALJ to properly consider the medical opinion evidence both as to the supportability factor and as to the consistency of the medical opinions.

---

[102] 20 C.F.R. § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

4.    <u>Summary</u>

Because the ALJ failed to properly consider the medical opinion evidence and failed to account for the opined limitation of moderate limitation in the ability to maintain attendance and punctuality, a remand for further proceedings is warranted.

**C.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly evaluate his testimony. As discussed above, the ALJ failed to properly consider the medical opinion evidence. Because the Court has remanded the case for consideration of the record as a whole, the Court finds this issue is moot.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[103] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[104]

_____

[103] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[104] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for

The Court finds that further development is necessary for a proper disability determination. The ALJ should articulate her reasoning at step two/three regarding the Psychiatric Review Technique, consider the medical opinions as to both the factors of consistency and supportability, and make findings at each of the five steps of the sequential evaluation process.

## IV.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 14th day of August, 2024.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).